UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80665-CIV-RYSKAMP/VITUNAC

ERIC HUNTER, CHRISTOPHER
TENORE and MICHELLE TENORE,
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

v.

BEV SMITH FORD, LLC d/b/a BEV
SMITH FORD,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE comes before the Court upon defendant's Motion to Dismiss **[DE 14]**, filed on September 14, 2007. Plaintiffs responded **[DE 20]** on October 10, 2007. Defendant replied **[DE 21]** on October 22, 2007. This Court held a hearing on the above motions on February 14, 2008. The motion is fully briefed and ripe for adjudication.

**I.    Introduction**

This is a civil action brought by plaintiffs against defendant alleging both state and federal causes of action stemming from the sale of motor vehicles. Accordingly, this suit is brought pursuant to this Court's federal question jurisdiction. Venue is properly with this Court as defendant resides in the Southern District of Florida. The following facts are based on plaintiffs' allegations contained in the Complaint **[DE 1]**.

Christopher and Michelle Tenore (the Tennores) purchased a 2006 Ford Expedition, VIN 1FMPU1351FLA48769, (Expedition) from defendant on August 26, 2006. Defendant prepared

numerous documents, including a retail installment sales contract (RISC), that the Tenores signed. The RISC disclosed the APR, finance charge, amount financed, total amount of payments, and the total sale price. It also included the number of payments, amount of each monthly payment and when payments were due. The RISC also included a clause stating that the dealership does not issue loans and therefore the contract is conditioned on a financial institution granting the Tenores funding. Accordingly, the contract included a rescission agreement wherein the seller may rescind the contract if a financial institution rejects the Tenores' request for funding.

The Tenores left their 2005 F150 pickup truck as a trade-in, VIN 1FTRX12W65NB89242, (Truck) and took possession of the Expedition subject to the above contract.

The next day, Eric Hunter (Hunter) visited defendant and purchased the Truck. As with the Tenores, defendant prepared numerous documents, including an RISC with identical disclosures and a rescission agreement, that Hunter signed. Hunter took possession of the Truck at that time.

On or about August 30, 2006, defendant revoked the contract pursuant to the rescission agreement for the Tenores Expedition. The Tenores returned the Expedition and requested that defendant return the Truck. Accordingly, defendant repossessed the Truck from Hunter on August 31, 2006 or September 1, 2006. Hunter did not know that the Truck was repossessed and only learned that defendant repossessed the Truck when he called the police to report the truck stolen on September 1, 2006.

The heart of plaintiffs' claims concern the documents that defendant drafted for plaintiffs' signatures. Based on the above facts, plaintiffs allege eight counts against defendant for violations of: Truth in Lending Act (TILA)(Count I); Florida Motor Vehicle Retail Sales Finance Act (MVRSFA)(Counts II and III); Fair Credit Reporting Act (FCRA)(IV); Equal Credit Opportunity Act (ECOA)(Count V); Florida Consumer Collection Practices Act (FCCPA)(Count VI); Florida

Deceptive and Unfair Trade Practices Act (FDUTPA)(Count VII) and Breach of Contract (Count VIII). Each of the counts are raised as individual and class action claims and plaintiffs seek statutory damages, injunctive and declaratory relief. Defendant filed its motion to dismiss all of the counts on an individual and class basis. This Order will address each count as alleged against the named plaintiffs and then discuss the validity of the class action claims.

## II.     Discussion

### A.     Standard of Law on Motions to Dismiss

A motion to dismiss merely tests the sufficiency of the complaint; it does not decide the merits of the case. *See Wein v. American Huts, Inc.*, 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004). Moreover, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This provides fair notice to the defendant regarding the claim and the grounds upon which the claim rests. *Conely v. Gibson*, 355 U.S. 41, 47 (1957)(the "no set of facts" standard announced in *Conely* has been overturned by *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007). To survive a motion to dismiss, a complaint must contain sufficient factual allegations "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1973 (2007). As such, mere labels and conclusions and a formulaic recitation of the elements of a cause of action are insufficient. *Id*. at 1965. The factual allegations made must "be enough to raise a right to relief above a speculative level[.]" *Id*. at 1965.

When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and construe them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche et al.*, 144 F.3d 732, 735 (11th Cir. 1998). As the Eleventh Circuit has noted, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995)

(quotations omitted). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action. *See Wein*, 313 F.Supp 2d at 1359.

To determine whether the complaint contains sufficient factual allegations, courts must look at the complaint and the supporting documents submitted with the complaint. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). If there is a conflict between the complaint and supporting documents, the information contained in the supporting documents controls. If the plaintiff fails to attach a crucial document to the complaint a defendant may include that document with its motion to dismiss, but the Court's consideration of that document may convert the motion into one for summary judgment. *Trustmark Ins. Co. v. ESLU Inc.*, 299 F.3d 1265, 1265 (11th Cir. 2002).

**B.     Count I -Truth in Lending Act (TILA)**

Congress enacted TILA to enhance economic stabilization and encourage competition between lenders. 15 U.S.C. §1601(a). These goals are achieved by the Act's purpose, of requiring lenders to disclose credit terms to consumers resulting in an open market wherein consumers can compare credit offers between lenders. *Id*. This Act is also designed to protect consumers from inaccurate and unfair credit billing practices. *Id*. Thus, the Act requires creditors to clearly and conspicuously make each of the required disclosures. §§1632(a); 1638 (listing the required disclosures). As such, this is a consumer statute and "is remedial in nature and therefore must be construed liberally in order to best serve Congress' intent." *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998).

Congress delegated to the Board of Governors of the Federal Reserve System the authority to promulgate rules and regulations consistent with the Act. §§1604; 1607; 12 C.F.R. § 226.1(b). Courts defer to these regulations developed by the Board when rendering rulings based on the Act.

4

*Mourning v. Family Publ'ns Serv., Inc.*, 441 U.S. 356, 369-71 (1973); *Ford Motor Credit Co. v. Mihollin*, 444 U.S. 555, 568 (1980).  These regulations apply to a business that regularly offers credit to consumers for primarily personal, family or household purposes that is subject to a finance charge or is payable by a written agreement in more than four installments.  12 C.F.R. § 226.1(c).  Exempt from the Act's coverage is credit issued over $25,000 and not secured by real property or a dwelling.  12 C.F.R. § 226.3.  Thus only plaintiff Hunter alleges a violation of the Act since the Tenore's transaction exceeded $25,000.

TILA imposes a different set of disclosure requirements depending on whether a creditor offers closed or open-ended credit.  15 U.S.C. §§ 1637, 1638; 12 C.F.R. Subparts B, C.  In this case, the parties contemplated that plaintiffs would be extended closed-end credit because only one credit transaction was sought.  12 C.F.R. §226.2(10), (20).  The regulations provide what, where, how and when a creditor must make the required disclosures.  12. C.F.R. § 226.17.  Crucial to this case, is when a creditor must make the required disclosures; all required disclosures must be made *before* the transaction is consummated.  12 C.F.R. § 226.17(3)(b)(emphasis added).  Consummation occurs at the point when a consumer becomes contractually obligated on a credit transaction.  15 U.S.C. § 226.2(13).  Courts must look to state law to determine when a consumer becomes contractually obligated. Official Commentary § 226.2(a)(13).  How to characterize the transaction for TILA purposes, however, is a matter of federal law.  *Cody v. Cmty. Loan Corp. of Richmond County*, 606 F.2d 499, 505 (5th Cir. 1979).

Florida law permits parties to condition contract formation on the occurrence of an event.  *Bragg* at 1067, *citing*, *Huskamp Motor Co. v. Hebden*, 104 So.2d 96, 98 (Fla.App. 3rd DCA 1958).

Here, the RISC that Hunter signed made all of the required TILA disclosures[1] and stated that "[t]his contract contains the entire agreement between [Hunter and defendant] relating to this contract. Any change to this contract must be in writing and [defendant] must sign it. No oral changes are binding." The RISC also stated that "[t]his Lease and/or Retail Installment Sales Contract is conditioned pending financial institution (Bank, Sales Finance Company, Credit Union, etc.) funding. This selling motor vehicle dealership DOES NOT LEND MONEY OR ACCEPT MONTHLY PAYMENTS."

Multiple courts in this district have held that consummation occurs upon the purchaser's signature of the RISC or sales contract. *See*, *Bragg* at 1066-68; *Muro v. Hermanos Auto Wholesalers, Inc.*, 514 F.Supp.2d 1343, 1349-50 (S.D. Fla. 2007); *Cannon v. Metro Ford, Inc.*, 242 F.Supp.2d 1322, 1329-30. Each of those cases, however, is distinguishable because, here, defendant specifically stated in the RISC that the consummation of the contract was conditional upon third party financing. Specifically including such a disclaimer is critical and fundamentally changes the point when consummation occurs from the moment the customer signs the RISC to the point where the third party accepts the terms of the financing agreement. As the *Muro* court explained:

> [i]t bears emphasizing that this decision does not prevent car dealers like Defendant from conditioning car sales on the later acceptance of a potential buyer's credit. If Defendant wants to engage in such a conditional credit agreement in the future, however, it must, as it could have here, clearly indicate that fact in the credit agreement documents."

*Muro* at 1350; *see also*, *Bragg* at 1067 ("no condition precedent set forth in the RISCs themselves"); *Cannon* at 1330 ("RISC was not made contingent upon plaintiffs' obtaining financing"). Thus, the

---

[1] Plaintiffs argue that these disclosures were merely illusory. It is unnecessary for this Court to address that argument as this Court holds that the contract was never consummated, as explained more fully below.

parties entered into a conditional contract, which is permitted by law. Since the condition precedent never occurred, the contract was never consummated and defendant could not have violated TILA.

### C. Counts II and III - Florida Motor Vehicle Retail Sales Finance Act (MVRSFA)

Plaintiffs raise two counts for violations of the MVRSFA. MVRSFA accompanies TILA so that if a contract complies with TILA, Florida law provides that the contract also complies with MVRSFA, provided that the contract also contains a separate written itemization of financing as explained in Fla. Stat. § 520.07(2). *Cannon* at 1333. Defendant has the burden of establishing compliance. Fla Stat. § 520.07(2)(e). Both the Tennores' and Hunter's RISCs contained a section itemizing the financing terms in compliance with MVRSFA.

Since this Court has already held that no TILA violation occurred, the MVRSFA allegations as to Hunter must also fail. Since plaintiff never alleged a TILA violation as to the Tennore's, however, this Court must determine whether defendant complied with all of the provisions of MVRSFA as to the Tennores.

The Tennores allege that defendants violated § 520.07(1)(a) because not all of the essential provisions of the contract were completed when the buyer signed the contract. This is the same argument that Hunter raised in his TILA claim, by arguing that since the formation of the contract was contingent upon financing, then the financing terms were merely illusory. Since the financing terms were merely illusory, any figures listed as finance terms were void and thus, not listed as required by the statute. For the reasons already explained in this Court's analysis of the TILA claim, this Court rejects the Tennores' argument.

It appears that the purpose of § 520.07 is similar to the TILA in that legislators wanted to ensure that consumers were informed of all essential terms of a contract before the contract becomes enforceable, at consummation. For TILA purposes, a contract typically is consummated upon the

7

buyer's signature. MVRSFA requires the contract to contain all essential terms before a buyer signs. In this case, however, defendant clearly indicated on the RISC that there was a condition precedent to the formation of the contract. Simply because the defendant placed a condition precedent in the contract does not change the accuracy of the listed essential terms. Those terms were accurate at the time the buyer signed the contract. If the third party lender declines the financing terms, then no contract was created and the buyer is free to renegotiate the terms of the sale. If the new terms are not agreeable, the consumer can return the car and is not subject to any further liability.

Section 520.07 does not expressly or implicitly prohibit financing contingencies. Since the statute directly links this legislation to TILA, the principles of law established for interpreting TILA should instruct the interpretation of MVRSFA. Since courts in this district have already held that conditions precedent that are conspicuously stated in the RISC do not violate TILA, the same should be true for MVRSFA.

As to plaintiffs' allegations contained in Count III, defendant's motion must be granted as plaintiffs fail to state a claim. Plaintiffs bring this count pursuant to Florida statute §§ 520.13 and 520.995(1)(c). Section 520.13 simply states that to the extent that a seller attempts to waive any provisions of the MVRSFA, those waiver provisions are unenforceable and void. It does not create a cause of action upon which to sue.

Likewise, § 520.995 is not part of MVRSFA and does not authorize a private cause of action. This statute only authorizes a Florida regulatory agency to take appropriate licensure or disciplinary action based on a seller's actions. *Jones v. TT of Longwood, Inc.*, 2007 WL 2298020 * 4 (M.D. Fla. 2007)(Raymond G. Ingalsbe representing the plaintiff).

### D. Count VI – Fair Credit Reporting Act (FCRA)

Plaintiffs argue that if defendant never intended to act as the creditor on the transaction, then

it should not have requested plaintiffs credit report. Plaintiffs' counsel raised the identical claim under substantially similar facts in *Jones v. TT of Longwood, Inc.* wherein that district court granted summary judgment against Jones. That court stated "[o]btaining a credit report in connection with a new business transaction in order to determine the consumer's eligibility, that is, whether the business wishes to undertake a transaction with the consumer, is a permissible purpose under the FCRA. *Id* at *5; *citing*, *Smith v. Bob Smith Chevrolet*, 275 F.Supp.2d 808, 816-17 (W.D.Ky. 2003); *see also*, *Clemons v. Cutler Ridge Automotive, LLC*, 2008 WL 879324 *2-3 (S.D.Fla 2008). This Court agrees.

      E.      **Count V – Equal Credit Opportunity Act (ECOA)**

It appears that plaintiffs bring this count pursuant to 12 C.F.R. § 202.9(a)(2), which requires a creditor to provide a consumer with a written notification, or statement of reasons, in the event that the consumer's credit application is denied.[2] Congress promulgated the ECOA to protect consumers from credit denials for discriminatory reasons such as the consumer's age, race, gender, marital status and source of income. 15 U.S.C. § 1691(a)-(c). Once a completed credit application is submitted, a creditor has thirty days in which to notify the applicant whether credit has been extended or denied. If credit has been denied, the creditor must provide the applicant with an explanation of why the application was rejected or notify the applicant that they are entitled to an explanation with instructions on how to obtain the explanation. § 1691(d)(2); 12 C.F.R. § 202.9. The Board of Governors of the Federal Reserve System has the authority to prescribe regulations to carry out the purposes of the act. §1691b; 12 C.F.R. 202.1.

---

[2] Although the statute also requires the same notification or statement, plaintiffs never cite to that section of the statute specifically. Plaintiffs merely state that they bring the cause of action pursuant to 1691 *et seq*. and 1691e, the provision governing damages. Nonetheless, this Court will proceed as if plaintiffs raised the claim under both § 1691d and § 202.9.

Thus, in order to find defendant liable, this Court must find that defendant was (1) a creditor, (2) who took adverse action with respect to plaintiffs' credit request and (3) failed to provide written notification of its reasons for the adverse action. *Madrigal v. Kline Oldsmobile, Inc.*, 423 F.3d 819, 822 (8th Cir. 2005). The issue of whether defendant is a creditor is dispositive, in that this Court holds that defendant is not a creditor as defined by the statute and the regulations.

The statute defines a creditor as an entity that "regularly extends, renews, or continues credit; *any person who regularly arranges for the extension, renewal, or continuation of credit*; or any assignee of an original creditor who participates in the decision to extend renew, or continue credit." §1691a(e)(emphasis added). The regulation more specifically defines a creditor as an entity that "regularly participates in a credit decision, including setting the terms of the credit ... For purposes of § 202.4(a) and (b), the term creditor also includes a person who, in the ordinary course of business, regularly refers applications or prospective applications to creditors, or selects or offers to select creditors to whom requests for credit may be made." 12 C.F.R. 202.2(l). Sections 202.4(a) and (b) provide that a creditor shall not discriminate against consumers when deciding whether to extend credit nor discourage a consumer from attempting to apply for credit. Although it does not appear that this issue has been raised in this Circuit, the Seventh Circuit, in *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, held that the definition of creditor contained in 12 C.F.R. 202.9(l) only applies to an entity that refers applicants to creditors or selects the creditors to whom credit requests are made when claims of discrimination and discouragement are alleged. 362 F.3d 971, 979 (7th Cir. 2004). This reading accords with the plain meaning of the statute and the regulation.

The contracts between defendant and plaintiffs clearly state that defendant does not provide financing. Since, a creditor is defined as an entity that "regularly participates in a credit decision, including setting the terms of the credit" when discrimination or discouragement is not alleged,

10

defendant was not a creditor and was therefore not required to make a written ECOA notification to plaintiffs.

### F. Florida Consumer Collection Practices Act (FCCPA)

Plaintiffs allege that defendant violated a provision of the FCCPA which states that when "collecting consumer debts, no person shall: ... (9) claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist[.]" Fla Stat. § 559.72(9). The complaint states that defendant violated the act "by obtaining plaintiffs' ... signatures on rescission forms which assert the existence of a legal right to take plaintiffs' ... vehicles and to unilaterally rescind or revoke their credit transactions, which rights defendant knows did not and do not exist as the form(s) are contrary to the common law of contracts, contrary to TILA and the MVRSFA," and other Florida statutes. Compl. ¶ 82.

First, this Court has already held that defendant has not violated TILA or MVRSFA. Moreover, the rescission agreement clearly states that the seller may rescind only if a financial institution refuses to extend the buyer credit or if the seller has good cause to believe that a financial institution will refuse to extend credit. This directly contradicts plaintiffs' assertion that the contract gave defendant a legal right to "unilaterally rescind or revoke [plaintiffs'] credit transactions." Finally, there was no debt to collect as no contract had been formed. The rescission agreement merely evidenced the common sense reality of the parties, that the sale was conditional and, in the event that no contract formed, the buyer would return the vehicle and the seller would return any consideration paid.

### G. Florida Deceptive and Unfair Trade Practices Act (FDUTPA)

FDUPTA proscribes any unfair or deceptive acts or practices committed in the conduct of

any trade or commerce. Fla. Stat. § 501.204(1). Any person suffering a loss as a result of a violation of this statute may commence a private cause of action for actual damages, attorney's fees, and court costs. Fla. Stat.§ 501.211. This law was created with the intention of providing Florida consumers with a simplified statutory cause of action that provides additional remedies to recover economic damages incurred as a result of a product or service purchased, where a seller used unfair or deceptive practices or acts. *Jones v. TT of Longwood, Inc.*, 2007 WL 2298020 * 6 (M.D. Fla. 2007); *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So.2d 602, 606 (Fla. 2nd D.C.A. 1997). FDUPTA remedies were created to be awarded in addition to other remedies already available under state and local laws. *Longwood* at *6; *Pinellas County Dep't. of Consumer Affairs v. Castle*, 392 So.2d 1292, 1293 (Fla. 1980). FUDPA is violated when a party's actions offend established public policy, are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Longwood* at *6; *Suris v. Filmore Liquidating, Inc.*, 651 So.2d 1282, 1283 (Fla. 3rd D.C.A. 1995).

Plaintiffs appear to base all of their FDUPTA allegations on the violation of the state and federal statutes already alleged in counts I through VI. First, this Court has already considered and rejected plaintiffs' argument that the RISC was not completed as to all essential provisions. Second, this Court has already held that the contract was never consummated as the contract clearly states a condition precedent to formation, that a third party extend the buyer financing. Third, this Court has already held that the rescission form does not violate any provisions of the law. Fourth, this Court has already held that the contract terms explicitly contradict plaintiffs' contentions that defendant had a contractual obligation to provide financing to the buyers. Fifth, this Court has already held that defendant did not violate TILA, MVRSFA, FCRA, ECOA, or FCCPA. For these reasons, this Court finds no violation of the FDUPTA.

### H. Breach of Contract

For the reasons explained above, no binding contract existed between plaintiffs and defendant as the contract contained a condition precedent, which required a third party to provide financing. Since no third party provided financing, no contract was formed, and therefore defendant did not breach the contract.

### I. Class Action Allegations

Since this Court has granted the motion to dismiss in its entirety, no class can be certified.

### III. Conclusion

After carefully considering the motion and the pertinent portions of the record, it is hereby,

ORDERED and ADJUDGED that defendant's Motion to Dismiss **[DE 14]** is GRANTED. The parties' joint motion for extension of time **[DE 46]** is accordingly DENIED. Final judgment shall be issued by separate order.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 29 day of April, 2008.

                                      /s/ Kenneth L. Ryskamp
                                      KENNETH L. RYSKAMP
                                      UNITED STATES DISTRICT JUDGE

Copies provided:
All counsel of record